# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

### BATON ROUGE DIVISION

| | | |
|---|---|---|
| LINDA FRENCH AND ANN FRENCH GONSALVES | : | DOCKET NO. 3:12-089 |
| VS. | : | JUDGE TRIMBLE |
| DADE BEHRING LIFE INSURANCE PLAN, et al | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are two motions: (1)Motion for Leave to File Amended Complaint (R. #14) and (2) Defendant Dade Behring Life Insurance Plan's Motion to Dismiss and Opposition to Plaintiffs' Motion for Leave to File Amended Complaint" (R.# 19).  In their motion for leave to amend complaint, plaintiffs seek to add additional defendants and state additional claims. Defendants object to plaintiffs' motion for leave to amend.  Contemporaneously with their objection, defendants seek to dismiss the instant lawsuit based on (1) prematurity, (2) inappropriate venue, (3)  because the Plan terms do not permit the benefits plaintiffs seek and (4) Employee Retirement Income Security Act of 1974 ("ERISA") does not permit the monetary damages plaintiffs seek.[1]

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiffs filed the instant lawsuit seeking additional benefits they allege are due under a life insurance policy. Before his death, Martin French worked for Dade Behring, Inc.  Plaintiffs, Mr. French's sisters, received life insurance benefits from the Dade Behring Life Insurance Plan ("Plan"), an employee welfare plan governed by ERISA,  insured and administered by Hartford Life and

---

[1]  R. #19.

Accident Insurance Company ("Hartford") and Continental Assurance Company ("CNA"). The Administrative Committee[2] of Dade Behring Flexible Benefits Plan is or was the administrator of the Plan. The Administrative Committee is controlled by its members. Named defendants, Salvatore S. Dadouche, Paul Ingraham and Candace Davis are alleged to be members of the Administrative Committee.[3]

When hired, Mr. French enrolled in both basic and optional life insurance benefits which would pay the beneficiaries up to five times his annual salary. Over time, Mr. French's salary increases allowed benefits that exceed $800,000.00. Upon his death, the Plan paid $321,942.66 to the beneficiary of his basic life insurance and $478,058 to plaintiffs as beneficiaries of his optional life insurance benefits. The Plan interpreted the policy to limit coverage benefits to $800,000. However, statements after his death revealed that Mr. French had $321,942.66 in basic life insurance benefits and $1,609,713.30 in optional life insurance benefits.

Hartford determined that the beneficiaries were only entitled to $800,000.00 in total benefits. To be eligible for benefits in excess of $800,000.00, the Plan determined that the insured was required to provide Evidence of Insurability ("EOI"), also known as Proof of Good Health. The Plan alleges that Mr. French failed to provide the EOI. Plaintiffs allege that either the Administrators failed to properly notify Mr. French that he was required to provide EOI, or alternatively, he provided EOI and due to improper maintenance of records, the EOI cannot be located.

_____

[2] The Administrative Committee of Siemines Corporation is a defendant and became Plan Administrator of the Plan in connection with the merger of Dade Behring, Inc. into Siemens Corporation or one of its subsidiaries and assumed the obligations and responsibilities of the Administrative Committee of the Dade Behring Flexible Benefits Plan.

[3] Amended complaint, ¶ 10,11, and 12.

2

Plaintiffs appealed the denial of their claim by Hartford for an additional $1,131,655 for optional life insurance to both Hartford and to the Dade Behring Administrative Committee ("Administrative Committee"). The denials were affirmed; the last appeal denial was by letter dated July 24, 2006.

On June 24, 2009, plaintiffs filed a lawsuit against the Plan in the Middle District of Louisiana entitled Linda French and Ann French Gonsalves v. Dade Behring Life Insurance Plan ("French I").[4] This lawsuit asserted that plaintiffs were entitled to the additional optional life insurance benefits under the Plan, and/or in the alternative, the Plan was estopped under ERISA from denying the additional benefits.

The Plan filed a motion to dismiss the complaint in French I based on improper venue. The court ultimately denied the motion finding that one of the plaintiffs was a resident of Louisiana in Livingston Parish, and that venue was proper because the lawsuit was filed in a district where plan payments were paid and allegedly remained payable to a designated beneficiary.[5]

Thereafter, the Plan answered the complaint and provided the administrative record reviewed by the Plan Administrator. Plaintiffs disputed the thoroughness of the administrative record maintaining that the record submitted by the Plan was incomplete because it did not include the majority of the file generated by Hartford during its review of plaintiffs' file ("Hartford file"). Hartford argued that its files were irrelevant. Magistrate Judge Noland found that the Hartford files could not be part of the administrative record because the Administrative Committee had not

---

[4] Civil Action No. 09-394.

[5] French I, Magistrate Report pp 7-9; see also Ruling by the district court adopting the Report. (R. #37).

considered the files during the appeals process.[6]

The case was then transferred to this court for further proceedings which included a motion to remand and plaintiffs' motion for reconsideration of the previous ruling that the administrative record was complete. This court reversed the previous ruling finding that because the Hartford files were available and relevant to the Plan Administrator during its consideration of plaintiffs' claim, it was part of the administrative record as a matter of law. The Plan was ordered to produce and make available to plaintiffs the entire Hartford files, and the matter was remanded to the Plan Administrator for reconsideration of the full administrative record. In light of the remand, French I was dismissed without prejudice.

Initially, Hartford refused to produce its file without a subpoena, however, ultimately the file was produced to plaintiffs on March 19, 2012 after this lawsuit was filed.[7][8] This production failed to include the entire file as ordered by this court in French I on November 17, 2011.[9] Thereafter, plaintiffs served a subpoena duces tecum on the Hartford to obtain the entire contents of the file. The Hartford file was produced again on May 22, 2012 along with a privilege log listing the documents it withheld from production.

Plaintiffs submit that these files contained information that the Plan for approximately ten

---

[6] French I, Civil Action No. 3:09-394, R. #62.

[7] Plaintiffs inform the court that Hartford made repeated attempts to prevent plaintiffs from obtaining the Hartford files despite this court's order requiring Hartford to produce its entire file.

[8] Plaintiffs remark that they filed the instant lawsuit because of their inability to proceed with the administrative process on remand because Hartford refused to produce its file, and in order to subpoena the entire Hartford file.

[9] French I, R. #90.

4

years, did not notify its employees of an alleged requirement that they provide an EOI (evidence of insurability) in order to receive increases in coverage of $50,000 or more and that after Martin French died, Hartford and the Plan amended the policy to remove the particular EOI requirement without notifying or obtaining the consent of plaintiffs. The file also contained documents that revealed that the amendment was made retroactive to 1994.

Meanwhile, the instant lawsuit ("French II") was filed on February 15, 2012 again asserting that plaintiffs were entitled to the additional benefits. Plaintiffs maintain in this lawsuit that their claims for additional benefits should be "deemed denied and/or the administrative remedies exhausted."[10]

On May 31, 2012, plaintiffs submitted to the Administrative Committee of Siemens Corporation[11] ("Siemens Committee") a memorandum and exhibits to support their claim for additional benefits. Plaintiffs agreed that the Plan could respond to the instant complaint after the administrative process had been completed. Thus, during much of the briefing period for the instant motions, plaintiffs' claim has been under review by the Plan Administrator.

On July 20, 2012, plaintiffs filed a motion for leave to file an amended complaint. The amended complaint asserts four new causes of action and adds seven new defendants. The proposed amended complaint asserts that plaintiffs are owed benefits under the terms of the Plan, that defendants are estopped from denying additional life insurance benefits, and that certain defendants breached their fiduciary duties. It requests that these defendants pay plaintiffs an amount equal to

---

[10] R. #1, ¶ 27.

[11] Dade Behring was acquired by Siemens and the Administrative Committee of Siemens Corporation was named Plan Administrator.

the additional life insurance benefits claimed under the Plan.

## RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "[12] Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.[13]  The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true.[14]  In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.[15] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[16]  "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[17]  "[T]he complaint must contain either direct allegations

---

[12] Hitt v. City of Pasadena, 561 F.2d 606,608 (5th Cir. 1977)(per curium) citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

[13] Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[14] Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996).

[15] Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992).

[16] Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

[17] Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[18]

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."[19] A complaint that offers "labels and conclusions:" or "a formulaic recitation of the elements of a cause of action will not do."[20] Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[21]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[22]

### *Motion to Dismiss Complaint*

Defendants maintain that the complaint should be dismissed because it is premature and/or because of improper venue.

*Failure to exhaust administrative remedies*

Defendants maintain that the instant lawsuit is premature because the Plan Administrator has not decided plaintiffs' claim. Defendants argue that should the Administrative Committee grant plaintiffs' claim for additional life insurance benefits, plaintiffs would have no injury and their lawsuit would be moot.

---

[18] Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

[19] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

[20] Id.

[21] Id., at 557, 127 S.Ct. 1955.

[22] Id.

Plaintiffs remark that they completed an administrative review and exhausted their remedies in July 2006. The only reason the matter had to be remanded for a second administrative review was because the Plan claims it failed to review the Hartford file in the 2006 review. Then despite a court order, the Plan either could not or would not produce the Hartford file and therefore could not go through with the court-ordered administrative review. Thus, plaintiffs were forced to re-file their suit on February 15, 2012. Plaintiffs remark that when they filed the complaint, the Plan had exceeded the time allowed for administrative review under both the terms of the Plan and ERISA regulations. Thus, plaintiffs submit that the review is futile or deemed denied.

Plaintiffs maintain that the Plan's motion to dismiss is a breach of an agreement between the parties wherein the parties agreed to complete the administrative review, and then plaintiffs would amend to remove their claims of futility and deemed denial from the Complaint, and substitute a statement that administrative remedies had been exhausted. Plaintiffs submit that they have made their submission to the Administrative Committee and are awaiting the Committee's ruling, which they advise must be rendered October 1, 2012. Plaintiffs further note that the Plan sought an extension to file responsive pleadings to the Complaint to October 5, 2012 so that the administrative review would be completed before the responsive pleadings were filed. That extension was granted.[23]

In their reply brief, defendants inform the court that the Administrative Committee denied plaintiffs' claim for additional life insurance benefits based on its review of the administrative record, which included the Hartford file. Defendants then argue that exhaustion of the administrative process is of no consequence, and cites case law which holds that a party must have standing at the

---

[23] R. #16.

8

time the complaint is filed,[24] and the administrative remedies must be exhausted prior to the filing of the complaint.[25]

Plaintiffs maintain that the matter is ripe for adjudication either (1) because administrative remedies are deemed denied or futile, or (2) pursuant to the agreement of the parties to complete the administrative process. Because the administrative review process is now complete and also due to the procedural posture of this case and Hartford's unwarranted delay tactics despite this court's order to produce the entire Hartford file, we find that this matter is ripe for adjudication.

*Improper Venue*

Defendants maintain that the instant complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) because the action is brought in an improper venue. An ERISA cause of action is proper either in "the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."[26]

Defendants remind the court of the previous Magistrate Judge's ruling that venue would not be proper under the first prong of ERISA's venue provision because the Plan was administered in Illinois. However, the Magistrate concluded that venue was proper in the Middle District of

---

[24]   Citing <u>Pluet v. Frasier,</u> 355 F.3d 381, 385-86 (5th Cir. 2004)(holding that a minor does not have standing to sue because he is not the biological child of the deceased).

[25]   Citing <u>Galvan v. SBC Pension Benefit Plan,</u> 204 Fed.Appx. 335, 340 (5th Cir. 2006)(ERISA exhaustion is not a prerequisite to federal court jurisdiction; breach of fiduciary duties do not require exhaustion of administrative remedies; administrative remedies must be exhausted before bringing a benefits claim).

[26]   29 U.S.C. § 1132(e)(2).

9

Louisiana because that is where the breach arose.[27]  Defendants now argue that venue is improper because plaintiff, Linda French, no longer resides in this judicial district; since the filing of the first lawsuit, she has moved to Collier County, Florida.  The Magistrate mentioned in her ruling that the lawsuit "was filed in a district where plan payments were paid *and allegedly remain payable to a designated beneficiary.*"[28]  Thus, defendants argue that because Ms. French no longer lives in Denham Springs, Louisiana, the sole grounds for the court's venue is now absent.

Plaintiffs argue that venue is still proper because the deceased's employer and Plan Sponsor, Dade Behring, Inc. were both registered with the Secretary of State to do business in the State of Louisiana and listed its principal place of business in Baton Rouge, Louisiana.  Dade Behring had 18 employees in Louisiana and the Plan provided life insurance to those employees. The court agrees with plaintiffs that venue is proper in the Middle District of Louisiana where the initial breach took place– the underpayment of life insurance benefits– received by Ms. French in Denham Springs, Louisiana. For the foregoing reasons, the motion to dismiss the complaint will be denied.

### *Motion for Leave to File Amended Complaint*

Plaintiffs have asserted Counts III-V which include (1) equitable relief under § 502(a)(3) for violation of fiduciary duties regarding notification for the need for EOI under the $800,000 provision, (2) equitable relief under § 502 (a)(3) for violation of fiduciary duties regarding notification of the need for EOI under the $50,000 provision, and (3) equitable relief under § 502(a)(3) for breach of fiduciary duty for concealing that the $50,000 provision was in effect during

---

[27]  Plaintiff, Linda French was paid a check mailed to her then domicile in Denham Springs, Louisiana.

[28]  French I, Mag. Report, pp. 7-9.

Martin French's life.

Defendants maintain that the motion for leave to file the first amended complaint should be denied because it is futile and because it unduly prejudices the Plan.  Defendants argue that the amended complaint is futile for the following reasons: (1) it does not cure the deficiencies of the pending complaint, (2) plaintiffs' estoppel claim in Count II fails as a matter of law, (3) plaintiffs cannot plead a claim under ERISA § 502(a)(1)(B) and 502(a)(3), (4) the amended complaint does not establish that certain defendants were fiduciaries, (5) plaintiffs' claims for breach of fiduciary duties are insufficiently pled, and (6) Counts III-V of the first amended complaint are barred by ERISA's statute of limitations.

*Failure to exhaust administrative remedies*

Defendants maintain that the proposed amended complaint suffers the same deficiencies as the complaint-- prematurity due to failure to exhaust administrative remedies.  As previously noted, this argument is now moot because the administrative process is now complete.

*Improper venue*

Defendants likewise maintain that venue is improper.  Again, as noted above, we find this argument without merit.

*Estoppel under 29 USC § 1132(a)(1)(B) [ERISA § 502(a)(1)(B)]*

Plaintiffs allege that they are entitled, pursuant to 29 U.S.C. § 1132(a)(1)(B) [ERISA § 502(a)(1)(B)]and ERISA estoppel, to recover the balance of voluntary life insurance benefits from the Plan and the Insurers for misleading acts and written misrepresentations made to Martin French concerning his life insurance coverage.[29] Defendants maintain that Count II of the proposed amended

---

[29]  Proposed Amended Complaint, ¶ ¶ 143-147.

11

complaint – estoppel– is deficiently pled and must be dismissed and/or that equitable estoppel claims are not cognizable under 29 U.S.C. § 1132(a)(1)(B). Defendants assert that in an ERISA-estoppel theory, plaintiffs must establish; (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.[30] Defendants urge the court to find that the proposed amended complaint fails to allege that acts were intentional or in bad faith, or extraordinary circumstances.

Defendants cite a district court case which held that extraordinary circumstances can only be established through allegations of bad faith or fraud on the part of the employer or plan.[31] In Gearlds, the district court noted that the Fifth Circuit has "yet to flesh out the 'extraordinary circumstances'" requirement other than to cite , with approval, the Third Circuit's treatment of the issue.[32] Under the Third Circuit's approach, extraordinary circumstances "generally . . . involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud."[33]

The Third Circuit has also suggested that extraordinary circumstances may exist where a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled.[34] It has also

---

[30] Citing Mello v. Sara Lee Corp., 431 F.3d 440 (5th Cir. 2005) citing McCall v. Burlington Northern/Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000).

[31] Gearlds v. Entergy Srvcs., Inc., 2012 WL 1712441 **3-4 (S.D. Miss. May 14, 2012).

[32] High v. E-Systems, Inc., 459 F.3d 573, 580 n.3 (5th Cir. 2006).

[33] Burstein v. Retirement Account Plan for Emps. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 383 (3d Cir. 2003).

[34] Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996) (citing Smith v. Hartford Ins. Grp., 6 F.3d 131, 142 (3d Cir. 1993).

suggested that extraordinary circumstances could exist where misrepresentations were made to an especially vulnerable plaintiff.[35]

Relying on CIGNA v. Amara,[36] plaintiffs argue that the Supreme Court made no mention that a remedy of estoppel required proof of "extraordinary circumstances" or that claimants would have to prove that defendants acted intentionally or in bad faith.  Specifically, the Supreme Court said:

> [w]hen equity courts used the remedy of *estoppel*, they insisted upon a showing akin to detrimental reliance, *i.e.*, that the defendant's statement "in truth, influenced the conduct of" the plaintiff, causing "prejudic[e]." Accordingly, when a court exercises its authority under § 502(a)(3) to impose a remedy equivalent to estoppel, a showing of detrimental reliance must be made.(citations omitted)

> * * *

> [a] fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm–proved... by a preponderance of the evidence. That actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA. . . .[37]

The first amended complaint alleges that either the defendants failed to adequately notify Mr. French and other employees of the need for EOI, and/or if the employees, including Mr. French, were adequately notified, Mr. French provided EOI, but due to poor record keeping, the Plan and/or the insurers were unable to locate same.  The  proposed amended complaint alleges that defendants concealed the fact that after Mr. French died and his rights vested, Hartford, the Administrators and two of the Individual Defendants agreed to retroactively amend the policy to remove the $50,000 provision, without advising or obtaining consent from the Frenches of the amendment, and further

---

[35] Id.

[36] 131 S.Ct. 1866 (2011).

[37] Amara, 131 S.Ct. at 1881.

concealing the date of the enactment of the amendment. Plaintiffs argue that this was a significant change in the Plan, and a concealment of the date the plan was changed. The amendment effectively concealed from the Frenches the fact that, assuming that Hartford and Dade's new interpretation (that the policy required Martin French to provide an EOI) is correct, CNA, Hartford and Dade had failed for years to provide Martin French with proper notification of any alleged need to provide an EOI under the $50,000 provision, while, at the same time, erroneously confirming that his elected insurance coverage had increased well over $50,000, and that he did not need to take further action to maintain the increased coverage.[38] This is important because other policy provisions state that once EOI is submitted and approved, the insured does not have to provide EOI for subsequent changes. Our understanding of one interpretation of the policy is that had Mr. French been adequately notified when he acquired the first $50,000 coverage increase in 1997, he would have submitted EOI and not been required to provide EOI when the total benefit coverage exceeded $800,000 in the year 2000. Of course this interpretation completely ignores the 1996 summary plan description ("SPD") which provides that if you reach the excess coverage amount due to an increase in salary, EOI is not required.

The complaint alleges that the administrators/fiduciaries breached their fiduciary duty of maintaining records, and timely and accurately notifying employees of the requisites (providing EOI) to maintain benefits.[39] The proposed amended complaint further alleges that plaintiffs relied on the Plan Administrator's intentional misrepresentations about the amendment and their falsely

---

[38] Proposed amended complaint, ¶ 49.

[39] Id. ¶ 19-20, 27-59, 153-154, 159; 29 U.S.C. § 1104(a) requires fiduciaries to act "with care, skill, prudence and diligence."

14

suggesting that the amendment had been enacted prior to Mr. French's death.[40] The proposed

amended complaint further alleges that:

> For a period of approximately 10 years, Dade and the Insurers consistently
> communicated to employees that EOI was not required unless the employee
> requested or elected a higher option of coverage, and Dade issued benefit statements
> showing that coverage continued to increase with salary even for those employees
> whose combined coverage exceeded $800,000, even though Dade and Hartford now
> claim those employees were required to provide EOI and that these employees failed
> to provide EOI.[41]

The court does not believe that the Supreme Court intended to eliminate the element of

extraordinary circumstances in an estoppel claim under§ 502(a)(1)(B).  A thorough reading of the

opinion leads one to believe that the Court was analyzing how to provide other appropriate equitable

relief under § 502(a)(3) by reforming the terms of a Plan because § 502 (a)(1)(B) did not give the

district court the authority to reform the plan.  We base this conclusion on the following analysis of

the Supreme Court:

> Looking to the law of equity, there is no general principle that "detrimental
> reliance" must  be proved before a remedy is decreed. To the extent any such
> requirement arises, it is because the specific remedy being contemplated imposes
> such a requirement. Thus, ... when equity courts used the remedy of *estoppel,* they
> insisted upon a showing akin to detrimental reliance, *i.e.* that the defendant's
> statement "in truth, influenced the conduct of" the plaintiff, causing "prejudice[e]."
> Accordingly, when a court exercises its authority under § 502(a)(3), to impose a
> remedy equivalent to estoppel, a showing of detrimental reliance must be made.

> But this showing is not always necessary for other equitable remedies. Equity
> courts, for example, would reform contracts to reflect the mutual understanding of
> the contracting parties where "fraudulent suppression[s], omission[s], or
> insertion[s]," "material[ly] ... affect[ed]" the "substance" of the contract, even if the
> "complaining par[ty]" was negligent in not realizing its mistake, as long as the
> negligence did not fall below a standard of "reasonable prudence" and violate a legal

---

[40] Id., ¶ 75, 81-2, 85-9, 174.

[41] Id., ¶ 59.

duty.

Nor did equity courts insist upon a showing of detrimental reliance in cases where they ordered "surcharge." Rather, they simply ordered a trust or beneficiary made whole following a trustee's breach of trust. In such instances equity courts would "mold the relief to protect the rights of the beneficiary according to the situation involved." This flexible approach belies a strict requirement of "detrimental reliance."

To be sure, just as a court of equity would not surcharge a trustee for a nonexistent harm, a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm–proved (under the default rule for civil cases) by a preponderance of the evidence. That actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA. . . .[42]

We further conclude based on our understanding of Fifth Circuit jurisprudence and a conscious reading of Amara, that estoppel is still cognizable under § (a)(1)(B). In Amara, the Supreme Court held that the remedy being ordered by the district court– changing or reforming the terms of the Plan–[43] was not authorized by § (a)(1)(B) because this provision allows *enforcement* of a plan by allowing recovery under the terms of a plan, whereas § (a)(3) provided equitable relief which allowed courts to change or reform the terms of a plan in order to recover benefits for the harm caused– an equitable remedy. We do not believe that the equitable relief sanctioned by the Supreme Court and the ultimate ruling completely abrogated a plaintiff's right to bring an ERISA estoppel claim under § 502(a)(1)(B).

Taken as true, it is obvious to this court that had Mr. French received the proper notice requirement for EOI under the $50,000 provision, he would have provided EOI and been entitled to

---

[42] Amara, 131 S.Ct. at 1881 (citations omitted).

[43] The notice defects caused plaintiffs harm by the diminished value of the beneficiaries' interest in a pension plan.

16

the additional life insurance benefits that are the subject of this lawsuit, notwithstanding the requirement of EOI when coverage exceeded $800,000. If taken as true, the amended complaint alleges defective notice of EOI requirements, an active attempt to conceal a significant change in the Plan and an active attempt to conceal the date of the amendment which we find alleges sufficient factual allegations to establish the necessary elements of an ERISA estoppel claim, including extraordinary circumstances.

*Plaintiffs' alternative Breach of fiduciary duty claims under ERISA § 502(a)(3)*

Defendants maintain that because plaintiffs have asserted a cause of action under ERISA § 502(a)(1)(B), they cannot also sue for breach of fiduciary duty under ERISA § 502(a)(3). Defendants argue that this would be an attempt to obtain the same benefits underlying their § 502(a)(1)(B) claims.[44]

Plaintiffs maintain that Rule 8 of the Federal Rules of Civil Procedure allows both alternative and inconsistent pleadings. Plaintiffs recognize that the district courts in the Fifth Circuit are split on whether courts should always dismiss a claim for breach of fiduciary duty under § (a)(3) if the plaintiff has asserted a claim for benefits under § (a)(1)(B).

In Varity Corp. v. Howe,[45] the Supreme Court interpreted § 502(a)(3) to allow plaintiffs to sue for breach of fiduciary duty for personal recovery when no other appropriate relief is available.

---

[44] Defendants cite Tolson v. Avondale Indus., Inc., 141 F.3d 604, 610 (5th Cir. 1998); Moore v. Raytheon Corp., 314 F.Supp.2d 658, 664 (N.D. Tex. 2004) (holding that claims for equitable relief under § 502(a)(3) are only available when a plaintiff has no other relief under ERISA) Barrack v. Unum Am. Life Ins. Co., 409 F. Supp.2d 782, 787-788 (N.D. Tex. 2006)( denying plaintiff's motion for leave to amend complaint to include a claim for breach of fiduciary duty under § 502(a)(3) when plaintiff had already asserted a claim under § 502(a)(1)(B).

[45] 516 U.S. 489, 116 S.Ct. 1065 (1996).

Section 502(a)(3) allows a plan participant, beneficiary, or fiduciary to obtain, *inter alia,* "appropriate equitable relief" to remedy violations of an employee-benefit plan.[46] Courts have held that Congress's use of the term "equitable" in § (a)(3) was construed to encompass only categories of relief "*typically* available in equity," like injunction, mandamus, or restitution.[47]

Plaintiffs argue that their breach of fiduciary duty claim is not duplicative and therefore may be pled in the alternative. In other words, if plaintiffs cannot succeed under § 502(a)(1)(B) by enforcing the terms of the Plan, alternatively, they seek an equitable remedy pursuant to § 502(a)(3) for breach of fiduciary duty and the resulting harm caused. Plaintiffs note that the court in North Cypress Medical Center Operating Co. Ltd. v. Principal Life Ins. Co.,[48] allowed the plaintiffs to plead in the alternative. Specifically, the court allowed plaintiffs to plead the two ERISA claims in the alternative, but would not allow them to simultaneously seek to recover plan benefits under both § 502(a)(3) and § 502(a)(1)(B). In other words, success on a § 502(a)(1)(B) would preclude recovery under § 502(a)(3).

Plaintiffs assert that their claims under § (a)(1)(B) are wholly different than their claims under § (a)(3). The claims under § (a)(1)(B) seek life insurance benefits pursuant to the terms and conditions of the Plan and the underlying insurance policy, and questions whether, under those terms and conditions, Mr. French provided EOI or was required to provide EOI. This claim enforces the terms of the Plan.

Plaintiffs then argue that their claims under § (a)(3) for a breach of fiduciary duty, pled in

---

[46] Amschwand v. Spherion Corp., 505 F.3d 342 (5th Cir. 2007).

[47] Mertens v. Hewitt Associates, 508 U.S. 248, 113 S.Ct. 2063 (1993).

[48] 2012 WL 434043 (S.D. Tex. February 18, 2012).

the alternative, should the court find that plaintiffs are not entitled to further benefits under §
(a)(1)(B), is based on fiduciary obligations set out in ERISA and the Plan documents. The breach
of fiduciary claim is based on the fiduciaries' (1) failure to properly prepare and maintain records,
(2) providing Mr. French and other employees misleading information through defective summary
plan descriptions ("SPD") and other documents concerning the alleged need for EOI, and (3)
providing erroneous benefits reports/statements of the amount of insurance employees had accrued.
Thus, plaintiffs argue that their breach of fiduciary claims are not a "repackaging" of the benefits
claims. Plaintiffs alternatively seek an equitable remedy based on a harm caused by defendant's
breach of fiduciary duty in the event the plaintiffs do not succeed on their ERISA § 502(a)(3) claims.

Plaintiffs remark that if it is found that they are not entitled to benefits under the terms of the
plan, they will be without a remedy due to the misrepresentations made to Martin French. Thus, they
would have to rely on § (a)(3) for adequate relief. We agree and are inclined to allow plaintiffs to
plead both claims in the alternative, but not allow recovery under both ERISA provisions.

*ERISA § 502(a)(3) and monetary damages*

Defendants maintain that plaintiffs' attempt to amend the complaint is futile because
plaintiffs do not seek appropriate equitable relief under ERISA § 502(a)(3). Defendants maintain that
plaintiffs cannot seek monetary damages (the monetary value of lost policy proceeds) under ERISA
§ 502(a)(3). Defendants argue that this type of relief is the "classic form of legal relief" not available
under the statute.[49]

---

[49] Citing Amschwand v. Spherion Corp., 505 F.3d 342, 345 (5th Cir. 2007)(ERISA
provision allowing plan beneficiary to obtain "other appropriate equitable relief" did not permit
recovery of extracontractual, or "make-whole," damages in form of payment of life insurance
benefits that would have accrued to plan beneficiary but for plan fiduciary's breach of fiduciary
duty.

Plaintiffs argue that when, as may occur here, a claimant cannot prevail in a claim for benefits because of misrepresentations made outside of the claims process, and the claims process being limited to the terms of the plan cannot provide relief for those misrepresentations, § (a)(1)(B) does not provide "adequate relief." Thus, plaintiffs argue that the court should fashion appropriate equitable relief pursuant to § (a)(3).

In CIGNA Corp. v. Amara,[50] the Supreme Court allowed plaintiffs to assert claims under § 502(a)(3). The District Court had ordered relief pursuant to § 502(a)(1)(B) in two steps:(1) it ordered that the terms of the plan be reformed, and (2) it ordered recovery of the benefits provided by the "terms of [the reformed] plan." The appellate court affirmed and the Supreme Court vacated and remanded the case. The Supreme Court held that while § 502(a)(1)(B) does not authorize a district court to reform a plan, section 502(a)(3) authorizes "appropriate equitable relief" for violations of ERISA. In other words, § 502(a)(1)(B) speaks of "enforc[ing] the "terms of the plan", not changing or reforming them.[51]    The Supreme Court remanded the case in order for the District Court to turn to § 502(a)(3) to potentially reform the contract relying on the term "appropriate equitable relief." The Supreme Court noted that "the power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and was used to prevent fraud."[52]

The Court further noted that the District Court injunctions required the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed. "But the fact

---

[50]  131 S.Ct. 1866 (2011).

[51]  29 U.S.C. § 1132(a)(1)(B).

[52]  CIGNA Corp., 131 at 1879.

20

that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possess the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."[53]

Where Congress has provided a remedy for a particular plaintiff's injury in some other section of ERISA, "there will likely be no need for further relief, in which case such relief normally would not be 'appropriate.'"[54] Where no other relief is provided, however, appropriate equitable relief may comprise a monetary award of some sort.[55]

We find that the relief requested for the alleged harm caused is not prohibited by ERISA § 502(a)(3), and further conclude that plaintiffs should be able to pursue a remedy under ERISA § (a)(3) consistent with the limitation set forth above. Accordingly, we find no justification to dismiss this claim.

*Individual defendants*

Defendants maintain that the first amended complaint fails to allege that the Individual Defendants (Salvatore S. Dadouche, Paul Ingraham and Candace Davis) had any discretionary authority or control over the management or administration of the Plan. "Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives," and is defined " 'in functional terms of control and authority over the plan, . . . thus expanding the universe of

---

[53] Id., at 1880.

[54] Varity, 516 at U.S. at 515.

[55] Ream v. Frey, 107 F.3d 147, 152-53 (3d Cir. 1997).

persons subject to fiduciary duties – and to damages. . . ."[56] An ERISA fiduciary includes "anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration."[57]

Plaintiff asserts that the first amended complaint alleges that at "all relevant times, . . . the Individual Defendants, and the Insurers were fiduciaries with respect to their exercise of authority over the management and administration of the Plan."[58] The amended complaint further alleges that the Administrative Committee is the Plan Administrator.  The amended complaint alleges that the Administrative Committee was controlled by its members, and that these members and other fiduciaries administered the Plan.[59]  Under the express terms of the Plan, the Administrative Committee was "responsible for administering the Plan and the Constituent Plans," and "for preparing and maintaining records necessary to determine the rights and benefits of Employees, Participants and Beneficiaries or other persons under the Plan and Constituent Plans."[60]  The amended complaint alleges that defendants, Dadouche, Ingraham, and Davis, were all members of the Dade Behring Administrative Committee who exercised some control over the management and administration of the Plan.[61]

---

[56] 29 U.S.C. § 1002(21)(A); Reich v. Lancaster, 55 F.3d 1034 (5th Cir. 1995).

[57] Id.

[58] First Amended Complaint, ¶ ¶ 152, 158.

[59] Id., ¶ 8.

[60] First Amended Complaint ¶ 8.

[61] Id., ¶ ¶ 10, 11, 12.

22

The court finds that the factual allegations, if taken as true, support plaintiffs' assertions that the Individual Defendants were fiduciaries.[62]  However, future motions supported by undisputed factual evidence that the Individual Defendants do not qualify or function as fiduciaries may prompt us to dismiss these particular defendants.

Defendants maintain that plaintiffs' claims of fiduciary breach in Counts III-V are insufficiently pled because the Administrative Committee has yet to decide plaintiffs' claims for additional life insurance benefits.  As previously noted, this argument is now moot.

*Pleading requirements and Counts III-V and breach of fiduciary duties*

Defendants maintain that Counts III-V do not satisfy the pleading requirements necessary to allege an ERISA breach of fiduciary duty claim.  Defendants complain that the first amended complaint does not specify which Individual Defendant breached which fiduciary duty and argues that not differentiating between the actions of the defendants requires denial of plaintiffs' motion for leave to amended the complaint.

The first amended complaint alleges that the Individual Defendants are members of the Administrative Committee.[63]  The amended complaint alleges that the Administrative Committee exercised some control of the management and administration of the Plan.[64]  The amended complaint alleges that a plain reading of the policy provides as evidenced by actions and interpretations of the Plan by Dade and the Insurers, EOI was not required of those who enrolled at hire and whose

---

[62]  See In Re Enron, 284 F.Supp.2d 511, 555 (S.D. Tex. 2006)("It is will established that a plan administrator acts in a fiduciary capacity when it explains plan benefits, even likely future benefits, to its employees").

[63]  First Amended Complaint, ¶¶ 10, 11, 12.

[64]  Id.

coverage increased solely due to salary increases,[65] or if an EOI was required, Mr. French provided

EOI, yet due to poorly maintained records, it could not be found.[66]

Plaintiffs maintain that the first amended complaint details factual allegations made against

each of the Individual Defendants.  For instance, the amended complaint alleges that each of the

Individual Defendants breached their fiduciary duty requiring prudent maintenance of records and

timely and accurate notification of the requisites for maintaining benefits. The amended complaint

alleges that the Administrative Committee which was controlled by the Individual Defendants

actively prevented plaintiffs from discovering that the policy had been amended after Mr. French

died. The amended complaint alleges that the Administrative Committee failed to provide, refused

to provide and objected to producing the Hartford files which contained information about the

concealment. Specifically, Individual Defendants, Davis and Ingraham communicated with plaintiffs

and such communications were designed to conceal from plaintiffs the fact that the policy had been

amended after Mr. French's death, and during Mr. French's life, the $50,000 provision was in full

force and effect.[67] The amendment was approved on November 28, 2005 but was made retroactive

to December 20, 1994.[68]

The amended complaint details miscommunications and/or lack of notification, regarding

the requirements for EOI, or if EOI was provided, it was lost.  The complaint further alleges that

alternatively, assuming  EOI was required, Dade, the Individual Defendants and the Insurers

---

[65] Id., ¶ 16.

[66] Id.

[67] Id. at ¶ 19-21, 76-77, 86-89.

[68] Id. ¶ 74.

breached their fiduciary duty by misleading Mr. French and other employees concerning their need for EOI and either provided no notification or inadequate notifications of the need for EOI.[69]  The amended complaint alleges that the Individual Defendants, Administrators, and Insurers breached their fiduciary duties requiring prudent maintenance of records for determining the rights of participants and beneficiaries and requiring timely and accurate notification of the requisites for maintaining benefits, including the alleged need for EOI under a policy provision to be referred to as the "$50,000 provision."[70] The $50,000 provision provided that an EOI was not required when an insured enrolled for Voluntary Life coverage and made no request or election for a higher option, and the employee's coverage increases were due solely to salary increases.

The first amended complaint further alleges that the policy also required EOI for Voluntary Life Insurance in excess of $800,000,[71]  but that the entire policy read in *pari materia* demonstrates that EOI is not required when an insured enrolls for Voluntary Life coverage for a certain multiple of salary at the time of hire and makes no subsequent "requests" or "elections" for a higher option, and the employee's coverages increases are due solely to salary increases by $50,000 or more, including increases to over $800,000

Plaintiffs allege that the benefit statements provided by Dade Behring and the Insurers to Mr. French during his life confirm that he had full coverage (his insurance was not capped) and also confirmed that EOI was not required.[72]

---

[69] Id.

[70] Id., ¶ 20.

[71] Id., ¶ 44.

[72] Id., ¶ 41.

The amended complaint alleges the specific procedures to inform employees who needed to provide EOI and that procedure was rarely, if ever, followed.[73]   Thus, plaintiffs allege these notifications were deficient.[74]  The amended complaint alleges that Paul Ingraham intentionally attempted to continue to conceal the amendment with respect to the $50,000 provision by withholding documents in the Hartford files that contained information about the amendment, its retroactive effect, and that Dade and Hartford had been unable to locate EOI on many employees. The complaint also alleges that the new alleged interpretation for the policy by Dade and Hartford was inconsistent with their failure to provide adequate notice of the alleged need to provide EOI to Mr. French and other employees.[75]

Plaintiffs' claims against the Administrators, and the Individual Defendants for breach of fiduciary duty include (1) failure to properly prepare and maintain records necessary to determine the rights and benefits of employees, participants and beneficiaries or other persons, (2) misleading Mr. French and other employees and failing to properly notify them of the need to provide EOI, (3) repeated reports to Mr. French and other employees that their life insurance coverage was in an amount exceeding $800,000 and deduction of premiums for such coverage, even though the employees allegedly had not submitted EOI and therefore allegedly were not entitled to the amounts of coverage reported; (4)and other grounds to be shown at trial or in motions.

The court finds that plaintiffs' claims against Dade Behring, the Insurers and the Individual Defendants for breach of fiduciary duty are sufficiently pled.

---

[73]  Id. ¶ 50.

[74]  Id. ¶ 51.

[75]  Id. ¶ 95.

*Statute of limitations*

Defendants allege that Counts III-V are barred by ERISA's statue of limitations. ERISA §

413 provides the following regarding the statute of limitations for fiduciary breaches:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of–
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.[76]

Defendants maintain that all three causes of action are time barred because they were not

brought within six years after the date of the last action which constituted a part of the breach of

fiduciary duty. Defendants assert that because Martin French died on July 19, 2005, the complaint

must have been filed on July 19, 2011 because the alleged breach of fiduciary duty occurred prior

to Mr. French's death. We disagree. Plaintiffs could not have filed a claim until they were denied

benefits.

Alternatively, defendants maintain that the date of the plan amendment – November 28,

2005– should be the starting date. We disagree. The amended complaint alleges that the amendment

was intentionally concealed from plaintiffs, thus, because of the alleged concealment, the

commencement date would be the date of discovery of such breach.

Plaintiffs maintain that the motion for leave to amend was filed on July 20, 2012, four days

---

[76] 29 U.S.C. § 1113.

27

before the six-year anniversary of the final denial. Plaintiffs rely on the date of the final denial– July 24, 2006– as the date of the last action which constituted a part of the breach or violation, or in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation. The starting date with which to toll the statute of limitations could be either the date the plaintiffs discovered the alleged concealment or the date of the final denial of additional life insurance benefits– July 24, 2006. Neither party informed the court or argued the former. Therefore, based on the date the appeal was denied, we find that the claims in Counts III-V were timely filed.

*Undue prejudice*

Defendants argue that they are unduly prejudiced to be forced to defend this lawsuit because it is not ripe for adjudication. For reasons set forth above, we find this argument moot.

## CONCLUSION

For the reasons set forth above, the motion to dismiss will be denied and the motion for leave to file the first amended complaint will be granted.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 6ᵗʰ day of November, 2012.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE